UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
FIONA GREENIDGE,

                      Plaintiff,      **MEMORANDUM AND ORDER**

-against-                                   14-CV-7360 (SLT)

NYC HUMAN RESOURCE ADMINISTRATION,

                      Defendant.
-----------------------------------------------------------------x



**TOWNES, United States District Judge:**

      Plaintiff Fiona Greenidge, proceeding *pro se*, brings this action against defendant New York City Human Resources Administration (the "HRA") alleging that the HRA (1) violated Title VII of the Civil Rights Act of 1964 ("Title VII") because it has not yet scheduled a job interview upon her application for a civil service position and (2) violated plaintiff's civil rights by denying her application for certain public benefits. Plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915 is granted. However, for the reasons stated below, plaintiff's pleading fails to state a claim on which relief may be granted. In an abundance of caution, this Court grants plaintiff leave to file an amended pleading on or before March 6, 2015.

## *BACKGROUND*

      Plaintiff's pleading in this case consists of six pages. The first page—hereafter, the "Complaint"—is a one-page document which lists the parties and their addresses, invokes jurisdiction pursuant to Title VII, states that the only remedy plaintiff is seeking is "Monetary Damages," and notes that plaintiff's "Statement of Claim" is set forth in an attachment. The remaining five pages—the "Attachment"—consist of a letter addressed to an unnamed "Representative" but titled, "Complaint/Statement of Claim." For purposes of this memorandum and order, the allegations in the Attachment are assumed to be true.

Most of the allegations in the Attachment describe plaintiff's unsuccessful attempts to obtain benefits from the HRA. However, a paragraph on page 4 of the Attachment implies that plaintiff has applied for employment with the HRA but has yet to receive a job interview because unnamed HRA employees have conspired to blacklist her. For ease of analysis, this Court will first describe the allegations relating to plaintiff's applications for benefits, then discuss the allegations relating to plaintiff's application for employment.

### *The Allegations Regarding Benefits*

On August 21, 2014, plaintiff visited an HRA facility in Brooklyn to apply for various benefits, including Medicaid, food stamps, and temporary financial assistance. Attachment, p. 1. Plaintiff was interviewed by a young woman who "requested more information ... than necessary." *Id.* It is unclear whether plaintiff, who had filed previous applications with the HRA and believed the agency already had her "picture, Social Security Number, Address, and signature" in their computer, provided all the information requested. Plaintiff specifically alleges that she gave the woman her "Citizenship Papers" and a "Rent Statement" for July 2014, but that the woman told her that she had to submit a rent statement for August. *Id.*

Plaintiff did not return to the HRA facility with the documentation the woman had requested until August 29, 2014. *Id.* A few days later, plaintiff received a letter dated August 28, 2014, stating that her application for benefits had been denied. *Id.*, p. 2. Plaintiff subsequently received a second letter which stated that plaintiff's application had been denied because she failed to establish her "identity" by providing proof of her date of birth, address, and immigration status. *Id.* Plaintiff alleges that she has proof that the requisite proof was, in fact, submitted. *Id.*

2

Plaintiff appealed and was granted at least two hearings: one relating to plaintiff's application for food stamps and cash assistance and another relating to plaintiff's Medicaid application.[1] The former hearing was commenced on October 16, 2014, but was apparently never completed. According to plaintiff, the hearing officer was "very rude" and continuously asked plaintiff to repeat herself. *Id.*, p. 3. Although plaintiff represents that she, herself, was "not rude or disrespectful," the hearing officer interrupted the hearing to call a security guard. *Id.* Plaintiff, who "believe[s] that the Hearing Officer was told to put on an act," then "walked out of the Hearing." *Id.*

The latter hearing, relating to plaintiff's Medicaid application, was held on October 23, 2014. Plaintiff showed the hearing officer her citizenship papers, Social Security card, and other documentation, along with proof that these documents had been provided to the HRA. *Id.* According to plaintiff, the hearing officer "stated that there was an error on ... behalf of the HRA." *Id.* However, on November 3, 2014, plaintiff had a contentious telephone conversation with an HRA employee who accused plaintiff of "disrespecting her" and threatened to hang up on plaintiff. *Id.*, p. 4. Plaintiff threatened to sue the employee. *Id.* Thereafter, plaintiff learned that her "Medicaid card was not approved." *Id.*

Although the pleading alleges that plaintiff's "Civil Right ha[ve] been violated," *id.* (brackets added), it does not allege that the civil rights violations were attributable to the HRA's policies, customs, or practices. To the contrary, the pleading asserts that the HRA employees engaged "in a conspiracy" and "committed fraud" which "should result in criminal charges." *Id.* The complaint specifically alleges that the HRA employees violated HRA regulations which

---

[1]Although plaintiff's pleading alludes to a third hearing—allegedly held on October 27, 2014, Attachment, p. 3—the Attachment does not contain any other allegations relating to this hearing.

"state that an Applicant for Medical Assistance cannot be denied Medical Assistance if he/she is eligible," *id.*, and implies a violation of other regulations by stating: "Judges, City, State, and Federal employees must abide by the regulations that regulate the agencies that they are employed by." *Id.*, p. 5.

### *The Allegations Regarding Plaintiff's Employment Application*

Plaintiff's pleading also contains a paragraph which suggests that plaintiff has applied for employment with the HRA. This paragraph states that plaintiff is "currently on the Eligibility List for employment for positions offered by the city," and that the HRA is one of the City agencies for which she has "an outstanding certification." *Id.*, p. 4. Nonetheless, plaintiff has not yet received an "interview for employment." *Id.*

Plaintiff's complaint does not allege plaintiff's race, color, religion, sex, or national origin. However, the pleading alleges that the "discrimination and disrespect that [plaintiff] received from the city during [her] application process for employment with NYC agencies shows that discrimination is prevalent." *Id.*, p. 5 (brackets added). Plaintiff expresses the "belie[f] that [she] was black listed [*sic*]," and states that, "[i]n [her] opinion, there is a conspiracy against [her] to keep [her] life stagnant." *Id.*, p. 4 (brackets added). However, plaintiff's pleading does not allege facts to support the allegations of conspiracy or to explain why she believes she is being blacklisted.

### *DISCUSSION*

### *Legal Standard*

Title 28, Section 1915(e)(2)(B), of the United States Code provides that, "[n]otwithstanding any filing fee ... that may have been paid, the court shall dismiss the case at any time if the court determines that ... (B) the action (i) is frivolous or malicious; (ii) fails to

state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (brackets and ellipsis added). In addition, federal courts have an independent obligation to examine the basis of their jurisdiction. *See FW/PBS, Inc. v. City of Dallas*, 493 U.S. 215, 231 (1990). If a court "determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." Fed. R. Civ. P. 12(h)(3).

A document filed *pro se* is to be liberally construed, and "a *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). A court must "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 790 (2d Cir. 1994)). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

***Possible Bases for Federal Jurisdiction***

Federal courts are courts of limited jurisdiction and may not preside over cases if they lack subject-matter jurisdiction. *See Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 700-01 (2d Cir. 2000).

> The basic statutory grants of federal-court subject-matter jurisdiction are contained in 28 U.S.C. §§ 1331 and 1332. Section 1331 provides for "[f]ederal-question" jurisdiction, § 1332 for "[d]iversity of citizenship" jurisdiction. A plaintiff properly invokes § 1331 jurisdiction when she pleads a colorable claim "arising under" the Constitution or laws of the United States. ... She invokes § 1332 jurisdiction when she presents a claim between

parties of diverse citizenship that exceeds the required
jurisdictional amount, currently $75,000.

*Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (internal citations omitted; brackets in original). "The party invoking federal jurisdiction bears the burden of establishing that jurisdiction exists." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (quoting *Sharkey v. Quarantillo*, 541 F.3d 75, 82 (2d Cir. 2008)) (internal quotation marks omitted).

The allegations in the Complaint establish that there is no basis for diversity jurisdiction. The Complaint states that plaintiff resides in Brooklyn, New York, and defendant is a New York City agency. "In the absence of diversity of citizenship, it is essential to jurisdiction that a substantial federal question should be presented." *Ex parte Poresky*, 290 U.S. 30, 31-32 (1933). Accordingly, this Court must determine whether the complaint, liberally construed, suggests a basis for federal-question jurisdiction.

In this case, the pleading suggests two possible bases for federal-question jurisdiction. First, the Complaint specifically alleges that this Court has jurisdiction pursuant to Title VII of the 1964 Civil Rights Act. Second, the Attachment alleges a violation of plaintiff's civil rights, Attachment, p. 4, suggesting that plaintiff may be seeking to state a civil rights claim under 42 U.S.C. § 1983. Accordingly, this Court will analyze whether plaintiff's pleading states a claim under either of these two statutes.

### *Title VII*

Title VII prohibits employers, employment agencies, labor organizations, and their training programs from discriminating against employees and applicants for employment on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e-2. Specifically, Title VII provides, in pertinent part, that "[i]t shall be an unlawful employment practice for an

employer ... to limit, segregate, or classify ... applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities ... because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(a)(2) (brackets and ellipsis added).

To establish a *prima facie* case of discrimination under 42 U.S.C. § 2000e-2(a)(2), a plaintiff must show that: (1) she is a member of a protected class, (2) was qualified for the position she held, and (3) suffered an adverse employment action (4) under circumstances giving rise to an inference of discrimination. *See, e.g, Russell v. Aid to Developmentally Disabled, Inc.*, No. 12 CV 389 (DRH)(AKT), 2013 WL 633573, at *9 (E.D.N.Y. Feb. 20, 2013); *James v. Countrywide Financial Corp.*, 849 F. Supp. 2d 296, 308 (E.D.N.Y. 2012). Although a complaint need not plead facts establishing a *prima facie* case of employment discrimination in order to survive dismissal, *see Mohawk v. William Floyd Sch. Dist.*, No. 13-CV-2518 (JS)(GRB), 2014 WL 838162, at *2 (E.D.N.Y. Mar. 3, 2014) (brackets added); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002), the complaint's "factual allegations must be sufficient to support necessary legal conclusions" and must "plausibly suggest an entitlement to relief." *Ruston v. Town Bd. of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010); *see also Arista Records, LLC v. Doe 3*, (2d Cir. 2010) (although there is not a heightened pleading standard in employment discrimination cases, enough facts must still be pleaded to make plaintiff's claim plausible).

In this case, plaintiff's pleading does not allege that she is a member of a protected class. Moreover, the pleading does not allege that defendant has discriminated against plaintiff on account of her race, color, religion, sex, or national origin. Rather, plaintiff asserts that she has been blacklisted for some unspecified reason, and implies that HRA employees are conspiring against her alone. *See* Attachment, p. 4.

In addition, the allegations in the Attachment do not suggest that plaintiff has suffered an adverse employment action or discrimination of any kind. Plaintiff alleges that she is "currently on the Eligibility List for employment for positions offered by the city," including positions offered by the HRA, but that she has yet to receive an employment interview. Attachment, p. 4. These allegations imply that plaintiff has taken and passed a civil service examination, that her name is on an "eligible list" certified by the Department of Citywide Administrative Services, and that she is currently waiting to be contacted for an interview.

The mere fact that plaintiff has not yet been interviewed for a job, however, does not itself suggest that plaintiff has been subjected to an adverse employment action or discrimination. The Court takes judicial notice that the City's website repeatedly warns civil service applicants of the lengthy delays between the time an applicant passes a civil service examination and receives an interview. For example, the website notes that "[e]ligible lists are generally created six months to a year after the exam period ends, and candidates cannot be hired until this list is established." Http://www1.nyc.gov/jobs/faqs.page (under the question: "If I passed an exam, how long will it take before I am hired?"). The website also warns applicants that they may not receive an interview for months after the eligible list is established, stating:

> It is important to keep in mind that sometimes tests are given when few positions are available. [Applicants] ... may both take and pass their tests, but they may have to wait several months or more before a position becomes available and they are contacted for an interview.

Http://www1.nyc.gov/jobs/exams.page. Indeed, the website implies that some individuals on the eligible list may *never* be contacted for an interview, stating:

> Once a list has been established, it will typically remain active for
> four years. If you have not been contacted for a position by the time
> the eligible list expires, you will need to retake the exam.

Http://www1.nyc.gov/jobs/faqs.page (under the question: "If I passed an exam, how long will it take before I am hired?"). Accordingly, the fact that plaintiff has yet to receive an interview, without more, does not suggest discrimination. Rather, it suggests that plaintiff is only partway through the lengthy process of obtaining a civil service job.

*Section 1983*

Although plaintiff's pleading does not mention 42 U.S.C. § 1983 ("Section 1983"), it alleges that plaintiff's "Civil Rights ha[ve] been violated." Attachment, p. 4 (brackets added). This Court liberally construes that allegation as implying that plaintiff seeks to bring civil rights claims under Section 1983. As explained below, plaintiff's pleading suggests that plaintiff may have plausible Section 1983 claims, but not against the HRA.

Section 1983 itself "creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993). In order to maintain a § 1983 action, a plaintiff must allege both that the conduct complained of was "committed by a person acting under color of state law" and "deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan*, 13 F.3d 545, 547 (2d Cir. 1994).

In this case, the allegations in plaintiff's pleadings suggest possible violations of federal law and plaintiff's Constitutional rights. First, at least some courts have held that 42 U.S.C. § 1396a(8) gives eligible applicants a statutory right to reasonably prompt Medicaid assistance and that this right may be enforced pursuant to section 1983. *See Reynolds v. Giuliani*, 35 F.

9

Supp. 2d 331, 341 (S.D.N.Y. 1999) (citing cases), *modified on other grounds*, *Reynolds v. Giuliani*, 43 F. Supp. 2d 492 (S.D.N.Y. 1999). Accordingly, plaintiff's allegation that she did not receive a Medicaid card even after winning a favorable ruling from a hearing officer suggests that she may have a Section 1983 claim for a violation of her rights under 42 U.S.C. § 1396a(8).

Second, plaintiff's pleadings suggest that plaintiff may have a due process claim. In cases in which a plaintiff has a "legitimate claim of entitlement" to public benefits, "food stamps and welfare have been deemed a form of property." *Story v. Green*, 978 F.2d 60, 62-63 (2d Cir. 1992) (internal citations omitted). In such cases, state action depriving a plaintiff of such public benefits without due process can give rise to a due process claim. *See id.* Thus, the allegations that plaintiff was denied cash assistance and food stamps for which she was eligible and that an unnamed hearing officer concocted an excuse to deprive plaintiff of a meaningful appeal of that denial of benefits suggest that plaintiff may have a due process claim.

However, allegations that unspecified HRA employees or hearing officers deprived plaintiff of her statutory or due process rights, standing alone, do not suggest a plausible claim against the HRA itself. Municipalities and their agencies cannot be held liable under section 1983 on a theory of *respondeat superior*—that is, simply because they employed a person who violated plaintiff's rights. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003). Rather, to be liable under section 1983, the municipality or agency must have caused the deprivation of rights through a government policy "made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy." *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 694 (1978).

Plaintiff's pleading in this case does not state a Section 1983 claim against the HRA, the municipal agency which is the only defendant named in this action. The pleading alleges only that HRA employees engaged in some sort of "conspiracy" aimed at defrauding plaintiff of her benefits. Even if plaintiff's conclusory allegations of conspiracy were sufficient to state a claim—and they are not, *see Webb v. Goord*, 340 F.3d 105, 110-11 (2d Cir. 2003) (to maintain a conspiracy action, the plaintiff "must provide some factual basis supporting a meeting of the minds")—these allegations do not suggest that the conspiracy resulted from a municipal policy, custom or practice. To the contrary, the pleading specifically alleges that the HRA employees violated HRA regulations which "state that an Applicant for Medical Assistance cannot be denied Medical Assistance if he/she is eligible," Attachment, p. 4, and implies a violation of other regulations by stating: "Judges, City, State, and Federal employees must abide by the regulations that regulate the agencies that they are employed by." *Id.*, p. 5.

Since a liberal reading of the complaint suggests that plaintiff might be able to state a Section 1983 claim against individuals employed by the HRA, this Court will, in an abundance of caution, grant plaintiff leave to amend her complaint. The amended complaint shall be filed on or before March 6, 2015; shall be entitled, "Amended Complaint;" and shall bear the same docket number as this Memorandum and Order. If plaintiff fails to file her amended complaint within the time allowed, the Court may dismiss this action without further notice to plaintiff.

## *CONCLUSION*

For the reasons set forth above, plaintiff's complaint fails to state a claim on which relief may be granted. However, in an abundance of caution, this Court will grant plaintiff leave to file an amended complaint on or before March 6, 2015. No summonses shall issue at this time and

all further proceedings shall be stayed pending plaintiff's submission of her amended complaint. If plaintiff fails to file her amended complaint within the time allowed, the Court may dismiss this action without further notice to plaintiff. The Court certifies pursuant to 28 U.S.C. § 1915 (a)(3) that any appeal from this Memorandum and Order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

**SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: February 5, 2015
Brooklyn, New York