UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------x
FIONA GREENIDGE,

                                    Plaintiff,

                    -against-

NYC HUMAN RESOURCE ADMINISTRATION,

                                    Defendant.
-----------------------------------------------------------------x

FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★ AUG 1 4 2015 ★

BROOKLYN OFFICE

**MEMORANDUM AND ORDER**

14-CV-7360 (SLT)

**TOWNES, United States District Judge:**

Plaintiff Fiona Greenidge, proceeding *pro se*, brings this action against defendant New York City Human Resources Administration (the "HRA") alleging that the HRA (1) violated Title VII of the Civil Rights Act of 1964 ("Title VII") by failing to interview her for a civil service position, and (2) violated plaintiff's civil rights by denying her public benefits. In *Greenidge v. NYC Human Resource Admin.*, No. 14-CV-7360 (SLT), 2015 WL 518606 (E.D.N.Y. Feb. 6, 2015) (the "Prior M&O"), the Court granted plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915, noted that plaintiff's complaint failed to state a claim upon which relief can be granted, and granted plaintiff leave to amend her complaint. Although plaintiff timely filed an amended complaint on March 2, 2015, that pleading fails to cure the deficiencies identified in the Prior M&O. Since it would be futile to give plaintiff another opportunity to amend her pleading, this action is dismissed in its entirety.

## BACKGROUND

Plaintiff commenced this action in mid-December 2014. The original pleading—which is described in detail in the Prior M&O, familiarity with which is assumed—named the New York City Human Resource Administration ("HRA") as the sole defendant and contained allegations

suggesting claims under Title VII and 42 U.S.C. § 1983 ("Section 1983" or "§ 1983"). The pleading primarily alleged that HRA personnel had denied plaintiff Medicaid, food stamps and other public benefits to which she was entitled. However, it also included a paragraph which alleged that plaintiff had applied for employment with the HRA, but had yet to receive a job interview because unnamed HRA employees conspired to blacklist her.

In the Prior M&O, the Court concluded that the pleading failed to state a claim on which relief could be granted. With respect to plaintiff's Title VII claim, the Court noted that the pleading did not allege that plaintiff was a member of a protected class or allege that defendant discriminated against plaintiff on account of her race, color, religion, sex, or national origin. With respect to the § 1983 claims, the Court noted that the pleading did not allege the existence of a municipal policy, custom or practice that resulted in the denial of public benefits. However, the Court noted that a liberal reading of the complaint suggested that plaintiff might be able to state a Section 1983 claim against individuals employed by the HRA. Accordingly, the Court granted plaintiff leave to file an amended complaint.

On March 2, 2015, plaintiff filed her amended complaint. Like the original pleading, the amended pleading consisted of a one-page complaint (the "Complaint") and a lengthy handwritten attachment (the "Attachment"). In addition, the amended pleading attached three documents: (1) a New York City Housing Authority District Grievance Summary dated December 19, 2011, which stated that plaintiff was entitled to a rent recalculation; (2) a Fair Hearing Compliance Statement generated by the HRA's Family Independence Administration on December 11, 2014, which listed the assistance to which plaintiff was entitled and (3) a letter to plaintiff from the HRA's Family Independence Administration dated February 5, 2015, which

2

directed plaintiff to report to a clinic for a "comprehensive medical assessment" to determine plaintiff's "capacity to participate in HRA-required activities."

Although the amended pleading cures some of the deficiencies identified in the Prior M&O, it largely repeats, amplifies and updates the same claims raised in the original pleading. With respect to the Title VII claim, the amended pleading implies that plaintiff is a member of a protected class, stating that plaintiff is "multiracial" and that her "nationality is Barbadian, English and American by citizenship." Attachment, p. 5. It also asserts that "discrimination and prejudicial treatment ... received as a minority candidate for positions within NYC is the basis for [her] not being hired." *Id.*, p. 11. However, the pleading does not allege any facts to suggest that HRA's failure to interview plaintiff for a position was attributable to her race or nationality. Rather, it merely alleges that plaintiff is highly qualified to work as an Eligibility Specialist and that HRA has hired less qualified people to work as Eligibility Specialists, without identifying the race or nationality of those people. *See id.*

With respect to the § 1983 claims, the amended pleading does not allege that a custom, policy or practice of the HRA resulted in a violation of her federal statutory or constitutional rights. Rather, it alleges pettiness, incompetence and negligence by unnamed HRA workers who allegedly disrespect and discriminate against plaintiff every time she visits the agency. *Id.*, p. 1. For example, the amended pleading alleges that plaintiff's application for benefits was wrongly denied after she applied for employment with the HRA, *id.*, p. 4; implies that her application for Family Assistance and Food Stamp benefits was not adjudicated within 30 days, as prescribed by State regulations, *id.*; that HRA workers "intentionally removed" information regarding her high school and college credentials and "attempted to violate [her] rights further by giving [her] an

3

appointment to attend an Employment Assessment," *id.*, p. 6; that an "HRA worker refused to grant [her] the correct benefit amount," even though plaintiff was awarded that amount following a hearing, *id.*, p. 8, and that an HRA worker arranged to pay plaintiff's landlord back rent which plaintiff did not actually owe, *id.*, pp. 9-10. Plaintiff has appealed at least some of the workers' actions and determinations and, on several occasions, has obtained relief after a hearing. For example, plaintiff specifically alleges that she "had to attend a Hearing" to obtain the public benefits to which she was entitled, and that the fact that she was awarded the benefits "proves that HRA's employees intentionally violated [her] Civil Rights and Constitutional Rights." *Id.*, p. 4. She was also granted a hearing on the question of whether she needed to attend an Employment Assessment and won. *Id.*, p. 6.

## DISCUSSION

### Legal Standard

Title 28, Section 1915(e)(2)(B), of the United States Code provides that, "[n]otwithstanding any filing fee ... that may have been paid, the court shall dismiss the case at any time if the court determines that ... (B) the action (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." 28 U.S.C. § 1915(e)(2) (brackets and ellipsis added). To state a claim, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

4

In evaluating whether a pleading states a claim for relief, "'a court must accept as true all [factual] allegations contained in a complaint' but need not accept 'legal conclusions.'" *Halebian v. Berv*, 590 F.3d 195, 203 (2d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678) (brackets in *Halebian*). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. Moreover, the "[f]actual allegations must be enough to raise a right to relief above the speculative level," and to nudge a plaintiff's claims "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

*Pro se* complaints, like other pleadings, must contain sufficient factual allegations to meet the plausibility standard. *See Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009). However, "[a] document filed *pro se* is 'to be liberally construed,' ... and 'a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Thus, a court must read a *pro se* complaint with "special solicitude," *Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994), and must interpret it to raise the strongest claims it suggests. *See Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474-75 (2d Cir. 2006). If a liberal reading of the complaint "gives any indication that a valid claim might be stated," the court must grant leave to amend the complaint. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000); *Gomez v. USAA Fed. Sav. Bank*, 171 F.3d 794, 795 (2d Cir. 1999).

### Title VII

Title VII makes it "an unlawful employment practice for an employer ... to fail or refuse to hire ... any individual ... because of such individual's race, color, religion, sex, or national

origin. 42 U.S.C.§ 2000e-2(a)(1). To establish a prima facie case of failure to hire based on

disparate treatment, a plaintiff must demonstrate "(i) that he belongs to a [protected class]; (ii)

that he applied and was qualified for a job for which the employer was seeking applicants; (iii)

that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the position

remained open and the employer continued to seek applicants from persons of complainant's

qualifications." *Johnson v. Long Island Univ.*, 58 F. Supp. 3d 211, 220-21 (E.D.N.Y. 2014)

(*quoting McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)) (brackets in *Johnson*).

In the Prior M&O, the Court noted that plaintiff's original pleading did not allege that

plaintiff was a member of a protected class. Plaintiff's amended pleading cures that deficiency

by alleging that plaintiff is multiracial and of Barbadian and English descent. Attachment, p. 5.

However, while the amended complaint alleges that plaintiff never received an interview for the

Eligibility Specialist position despite scoring higher than the 80th percentile on the civil service

examination, it does not allege that she was ever rejected for the position, or that the position

remained open thereafter while the continued to seek applicants from persons of plaintiff's

qualification. Rather, the pleading simply asserts that "discrimination and prejudicial treatment

... received as a minority candidate for positions within NYC is the basis for [her] not being

hired." Attachment, p. 11.

While the amended complaint also alleges that HRA has "hired people to work as

Eligibility Specialist[s] who do not have a B.S. degree in Public Affairs, or as much work

experience as [plaintiff]," Attachment, p. 5, this allegation does not suggest that plaintiff has

been discriminated against because of her protected characteristics. Plaintiff herself alleges that

interviewees were selected based on test scores, rather than other qualifications. Nothing in the

amended pleading suggests that non-minority applicants with worse civil service scores than plaintiff's received interviews. Accordingly, the factual allegations in the amended pleading do not plausibly suggest a claim under Title VII. *See Ruston v. Town Bd. of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010) ("Under *Iqbal*, factual allegations must be sufficient to support necessary legal conclusions," and must "plausibly suggest an entitlement to relief").

Morever, there is nothing to suggest that plaintiff exhausted her administrative remedies prior to commencing this action. Before filing a Title VII claim, a plaintiff must first exhaust his or her administrative remedies by timely filing of a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") or an equivalent state or city agency. 42 U.S.C. § 2000e–5(e); *Deravin v. Kerik*, 335 F.3d 195, 200 (2d Cir. 2003) ("As a precondition to filing a Title VII claim in federal court, a plaintiff must first pursue available administrative remedies and file a timely complaint with the EEOC"); *see also Legnani v. Alitalia Linee Aeree Italiane, S.P.A.*, 274 F.3d 683, 686 (2d Cir. 2001) (*per curiam*). Exhaustion of administrative remedies "is a precondition to bringing a Title VII claim in federal court, rather than a jurisdictional requirement." *Francis v. City of New York*, 235 F.3d 763, 768 (2d Cir. 2000) (internal quotations and citations omitted). However, exhaustion of administrative remedies through the EEOC remains "'an essential element of Title VII's statutory scheme,' and one with which defendants are entitled to insist that plaintiffs comply." *Id.* (quoting *Butts v. City of New York Dept. of Hous. Pres. & Dev.*, 990 F.2d 1397, 1401 (2d Cir. 1993)). Thus, unless plaintiff exhausted her administrative remedies prior to filing this action, it would be futile to pursue the Title VII claim.

### *Section 1983*

In addition, plaintiff's amended pleading does not state a viable claim under § 1983. In the Prior M&O, the Court noted that plaintiff might have a plausible § 1983 claim, but not against the HRA. The Court then granted plaintiff leave to amend her complaint in order to state a § 1983 claim against individuals employed by the HRA. However, plaintiff has failed to do so. Rather, plaintiff's amended pleading again names the HRA as the sole defendant, and again fails to allege any policy, custom or practice of that City agency which might give rise to municipal liability.

Although it might be possible for plaintiff to amend her complaint to name specific HRA employees, the factual allegations in the Attachment do not suggest a violation of plaintiff's constitutional or statutory rights. At most, these allegations suggest pettiness, incompetence and negligence, resulting in delays in awarding benefits, erroneous benefit calculations, payments to incorrect parties and the imposition of inapplicable requirements. However, negligence is not actionable under § 1983. *See, e.g., Daniels v. Williams*, 474 U.S. 327, 332 (1986) (noting that negligence is not actionable under § 1983); *Estelle v. Gamble*, 429 U.S. 97, 105-06 (1976) (noting that mere negligence in diagnosis or treatment is insufficient to state a valid Constitutional claim). Accordingly, none of these allegations suggest a viable § 1983 claim.

### *CONCLUSION*

For the reasons set forth above, plaintiff's amended pleading fails to state a claim on which relief may be granted. Since the *pro se* plaintiff has already been afforded the opportunity to amend her pleading and since it would be futile to give her another opportunity, this action is dismissed in its entirety. *See* 28 U.S.C. § 1915(e)(2)(B)(ii). The Court certifies pursuant to 28

U.S.C. § 1915 (a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

    **SO ORDERED.**

/s/ Sandra L. Townes
SANDRA L. TOWNES
United States District Judge

Dated: August 11, 2015
    Brooklyn, New York